UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

**FILED**

NOV **1 3** 2024

**U. S. DISTRICT COURT**
**EASTERN DISTRICT OF MO**
**ST. LOUIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **4:24CR596 RWS/SRW** |
| | ) | |
| WEN CHEN and | ) | |
| PING OUYANG, | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

The Grand Jury charges that, at times relevant to this Indictment:

### COUNT ONE
### (Wire Fraud Conspiracy: 18 U.S.C. § 1349)

#### The Conspiracy

1.     Beginning at an exact time unknown, but including between on or about October 17, 2024 and on or about October 26, 2024, in the Eastern District of Missouri and elsewhere, the defendants,

### WEN CHEN and
### PING OUYANG,

voluntarily and intentionally combined, conspired, confederated, and agreed with one another and others, known and unknown to the Grand Jury, to commit wire fraud; that is, the defendants devised and intended to devise and participated in a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses and representations, and, for the purpose of executing the scheme and artifice and attempting to do so, did knowingly cause and attempt to cause to be transmitted by means of wire communication in interstate

commerce certain writings, signs, and signals in the form of interstate electronic communications, all in violation of Title 18, United States Code, Section 1349.

<b>Object of the Conspiracy</b>

2.     The object of the conspiracy was to fraudulently obtain money from elderly victims throughout the United States, including, but not limited to, elderly victims in the Eastern District of Missouri.

<b>The Manner and Means of the Wire Fraud Scheme</b>

It was part of the wire fraud scheme that:

3.     The conspirators initiated contact with elderly victims through fraudulent electronic messages, such as emails, and, during those communications, made false representations to induce the elderly victims into providing money, including cash, to couriers who worked on behalf of the conspiracy.

4.     In the fraudulent electronic messages, the conspirators falsely represented themselves as being affiliated with a legitimate entity, such as a private company or a law enforcement agency, and provided the elderly victims with false reasons as to why the victims should call phone numbers associated with the conspirators, such as that the victims owed money, that the victims were entitled to a refund of money, or that the victims' personal information was at risk.

5.     When the elderly victims communicated with the conspirators online and over the phone, the conspirators used false names and gave the victims false reasons as to why the victims needed to pay money to the conspirators, such as that the victims' financial accounts had been

2

refunded too much money or that the victims' identities had been compromised so they needed to pay money to protect their identities.

6.     Once the elderly victims agreed to pay money to the conspirators, the conspirators arranged for the victims to meet in person with couriers who worked on behalf of the conspiracy, either at the victims' residences or at neutral locations like gas stations.

7.     The conspirators then communicated with the couriers, including through encrypted messaging apps, such as WhatsApp, and provided the couriers with instructions to meet with the elderly victims, including by providing the address where the meeting would occur and the amount of money to obtain from the elderly victims.   Upon receiving these instructions, the couriers met with the elderly victims and retrieved cash from them.

8.     Defendant Wen Chen ("Defendant Chen"), Defendant Ping Ouyang ("Defendant Ouyang"), and Co-Conspirator 1 worked as couriers on behalf of the conspiracy, and met with elderly victims to retrieve, and to attempt to retrieve, cash from them, including in the Eastern District of Missouri.

9.     Defendant Chen, Defendant Ouyang, and Co-Conspirator 1 caused, and attempted to cause, the transmission of interstate wire communications in furtherance of, or in an attempt to carry out, some essential step in the wire fraud scheme.

10.     Using the manner and means described above, the conspirators, including Defendant Chen, Defendant Ouyang, and Co-Conspirator 1, defrauded, and attempted to defraud, elderly victims in numerous states, including Illinois, Kentucky, and Missouri, of more than $100,000.

3

**Defrauding Victim D.B. and Victim B.B. in the Eastern District of Missouri**

11.    On or about October 17, 2024, the conspirators initiated contact with Victim D.B.,
who is 89 years old, and his spouse, Victim B.B., who is 85 years old, both of whom reside in St.
Louis County, Missouri, through a fraudulent email in which the conspirators falsely represented
themselves as being affiliated with a computer software company.

12.    In that fraudulent email, the conspirators falsely advised Victim D.B. and Victim
B.B. that Victim D.B.'s software subscription had been renewed, even though he did not have a
software subscription that could have been renewed.

13.    In subsequent fraudulent emails and phone calls, the conspirators instructed Victim
B.B. to fill out a form, including by providing her banking information, and falsely informed
Victim B.B. that $30,000 had accidentally been deposited into her bank account and needed to be
repaid.   The conspirators instructed Victim B.B. to withdraw $30,000 cash from her bank account,
which she did, and then had a courier pick up the cash from Victim B.B.'s and Victim D.B.'s
residence later that day.

14.    The following day, on or about October 18, 2024, the conspirators called Victim
B.B. and instructed her to withdraw another $30,000 cash from her bank account, which she did,
and instructed her to meet a courier at a gas station in St. Louis County, Missouri, in the Eastern
District of Missouri, which she also did.

15.    When Victim B.B. arrived at the gas station, she met with Co-Conspirator 1, who
provided her with a false name and retrieved the $30,000 cash from her.

4

**Defendant Chen and Defendant Ouyang**

16.     Approximately a week later, on or about October 26, 2024, the conspirators contacted Co-Conspirator 1 through WhatsApp and requested that Co-Conspirator 1 pick up $20,000 cash from the home address of an intended elderly victim in Kentucky.

17.     That same day, after Co-Conspirator 1 informed the conspirators that he could not do so, Defendant Chen and Defendant Ouyang drove to the home address of the intended elderly victim in Kentucky—who the conspirators contacted via the internet and falsely represented themselves as being affiliated with a law enforcement agency that needed $20,000 cash as part of a sting operation aimed at apprehending individuals who had supposedly compromised the victim's identity.

18.     When Defendant Chen and Defendant Ouyang arrived at the home address of the intended elderly victim in Kentucky, they were intercepted by law enforcement.

**FORFEITURE ALLEGATION**

The United States Attorney further alleges there is probable cause that:

1.     Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of a conspiracy to violate Title 18, United States Code, Section 1343, as set forth in Count One, the defendants shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation.

2.     Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting, or derived from, any proceeds traceable to such violation.

3.     Specific property subject to forfeiture includes, but is not limited to, $13,200.00 in United States currency.

5

4.    If any of the property described above, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.


_____
FOREPERSON


SAYLER A. FLEMING
United States Attorney


_____
JUSTIN M. LADENDORF, #68558MO
Assistant United States Attorney

6